
DA 11-0556

## IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2012 MT 89

OLIVER W. ARLINGTON,

        Petitioner and Appellant,

  v.

MILLER'S TRUCKING, INC.,
a Montana corporation,

        Respondent and Appellee.

APPEAL FROM:    District Court of the Third Judicial District,
                    In and For the County of Granite, Cause No. DV-11-11
                    Honorable Ray J. Dayton, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Oliver W. Arlington (Self-Represented), Philipsburg, Montana

        For Appellee:

                Brian J. Smith, Megan L. Dishong, Garlington, Lohn & Robinson, PLLP,
                Missoula, Montana

                        Submitted on Briefs:  February 1, 2012

                                    Decided:  April 24, 2012

Filed:

                  _____
                                Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Oliver Arlington (Arlington) appeals from the Memorandum and Order on Petition for Leave to Present Additional Evidence and Petition for Judicial Review (Order), entered by the Third Judicial District Court of Granite County, Montana. The Order denied Arlington's petition to present additional evidence and affirmed the dismissal by the Montana Department of Labor and Industry (Department) of Arlington's claim against Miller's Trucking, Inc. (Miller's). Arlington seeks reversal of the Order, arguing that the final decision entered by the Department's Hearings Bureau (Bureau) did not follow the regulations pertaining to intrastate and interstate commerce, the Bureau Hearing Officer's Findings of Fact and Conclusions of Law were erroneous, and the District Court erroneously failed to allow the production of certain evidence.

¶2 We reverse and remand for further proceedings.

## ISSUES

¶3 Arlington raises four issues on appeal. We restate the issues as follows:

¶4 1. Did the District Court act within its discretion when it denied Arlington's Petition for Leave to Present Additional Evidence and upheld the evidentiary rulings made by the Hearing Officer?

¶5 2. Does substantial evidence support the Hearing Officer's decision, affirmed by the District Court, that Miller's Trucking, Inc., did not have an oral employment agreement with Arlington to pay him between $60,000 and $70,000 per year?

¶6    3.  Did the Hearing Officer and District Court correctly determine that Arlington engaged in activities of a character directly affecting the safety of the operation of motor vehicles in interstate commerce and is thus exempt from overtime requirements?

**FACTUAL AND PROCEDURAL BACKGROUND**

¶7    Arlington was employed by Miller's as a log truck driver and loader operator from September 2008 through August 2009.  Miller's trucks were registered in Montana, Idaho, Wyoming, and Washington, and Miller's had a permit to operate through the United States Department of Transportation (DOT).  As part of his employment, Arlington operated and maintained one or more of Miller's trucks, performing routine maintenance and safety checks on the trucks.  Arlington typically picked up logs at one location in Montana and drove on public and private roads within Montana to deliver the logs to another Montana location.  Arlington usually picked up logs in the area near Roundup, Montana, and delivered the logs to a railroad yard in Laurel, Montana, where the logs were then transported by rail to the Smurfit-Stone plant in Frenchtown, Montana. At Smurfit-Stone, the bark was removed from the logs and shipped out of Montana.  The logs were then turned into fiber paper, which was also shipped out of Montana.

¶8    Arlington's employment with Miller's stemmed from an oral agreement made between Arlington and Miller's owner, Tony Miller (Tony).  For his work, Miller's paid Arlington 25% of the "load rate," as calculated by Miller's.  Arlington, however, asserted that according to their oral agreement, he should have been paid a salary in the form of annual wages.  He contended he was hired for forty-hour work weeks, that he should have made between $60,000 and $70,000 in annual income, and that he should have

received additional payment for any overtime worked. Tony denied giving Arlington an oral guarantee of earning between $60,000 and $70,000 per year for driving for Miller's. Miller's asserted it properly paid 25% of the load rate due Arlington and that Arlington received all the compensation to which he was entitled.

¶9 Pursuant to § 39-3-201 et seq., MCA, Arlington filed a wage claim with the Department on November 3, 2009, seeking $25,568.32 in regular wages and $46,101.81 in overtime wages from Miller's for work performed during the period of employment. His claim was dismissed on December 16, 2009, when the Department's Wage and Hour Unit determined that Miller's did not owe Arlington any additional pay. Arlington appealed to the Department's Bureau and requested a redetermination of the dismissal decision. Upon redetermination on March 15, 2010, his claim was again dismissed for lack of merit and lack of sufficient evidence to support the pay he alleged he was owed.

¶10 Arlington appealed the redetermination and dismissal by the Bureau. The Bureau issued a Scheduling Order in May 2010, allowing formal discovery and requiring it to be completed, with responses due and depositions taken, on or before June 11, 2010. Though dated June 10, 2010, Arlington filed a Motion for Production on June 14, 2010, requesting the production of "[a] copy of all employment contracts for drivers employed by Miller['s] Trucking." Miller's objected, arguing that Arlington's request was filed too late, denying Miller's adequate time to respond by the date required by the Scheduling Order. Because Arlington was representing himself, the Bureau accorded him extra latitude in meeting the deadlines, and issued a Rescheduling Order requiring the parties to serve written discovery requests by August 13, 2010. On August 13, Arlington requested

4

the production of additional discovery from Miller's, including "[a] list and copies of all, Job Orders for Truck Drivers [it] placed with the Montana Job Service, [and] any Media advertisement in connection with those Job Orders, from January 1, 2005 to September 30, 2009." Miller's objected to this request on September 10, 2010, stating "it [wa]s wholly irrelevant to the claim at hand, unduly burdensome and overly broad." Arlington responded, arguing that the job orders were relevant to his claim and allowable in discovery, and that Miller's was in default and violation of the rules of discovery.

¶11 On October 10, 2010, Arlington requested that the Bureau issue a subpoena to the Montana Job Service for all the truck driver job orders from Miller's, for the period between January 1, 2005, and August 13, 2010. Arlington did not file a motion for an order compelling discovery, pursuant to M. R. Civ. P. 37(a) and Admin. R. M. 24.2.105(1) (1978). The Bureau never responded to his subpoena request.

¶12 The Hearing Officer held an administrative contested case hearing on November 18, 2010, at which Arlington represented himself and Miller's appeared by counsel. Both parties presented evidence and argument, and both Tony and Arlington testified as to the terms of the oral agreement. The Hearing Officer found Arlington's testimony was not corroborated or credible.

¶13 The Hearing Officer entered his Findings of Fact, Conclusions of Law, Order and Notice of Judicial Review Rights (Hearing Officer's Order) on March 9, 2011, dismissing Arlington's claim. The Hearing Officer determined that Arlington worked for Miller's under an oral agreement never reduced to writing. The Hearing Officer also found that there was "no substantial and credible evidence that Miller's either made any binding

5

representations about the monthly or annual wage that Arlington could reasonably expect to earn, or guaranteed any minimum monthly or annual wage that Arlington would earn." The Hearing Officer found that Arlington did not prove that Miller's entered into an agreement to pay him between $60,000 and $70,000. On a separate question, the Hearing Officer found that Arlington was not entitled to overtime wages because his employment was within the overtime exemption of the Motor Carrier Act (Act) by virtue of his involvement with interstate commerce.

¶14 Arlington filed petitions with the District Court on April 6, 2011, seeking judicial review and leave to present additional evidence. He argued that the Hearing Officer's Order should be reversed and that additional evidence should be received into the record for consideration by the Hearing Officer. He sought to include in the record two job listings for truck drivers that Miller's issued and posted through the Montana Job Service, as he believed they substantiated his wage claim. Although it is unclear when Arlington actually obtained copies of the job listings from an outside source, the record clearly shows that the Hearing Officer did not admit the job listings into evidence.

¶15 On August 24, 2011, the District Court affirmed the Hearing Officer's decision, dismissing Arlington's claim against Miller's and denying Arlington's request to present additional evidence.

¶16 Arlington appeals.

## STANDARD OF REVIEW

¶17 "When [a] district court's decision is based on review of an agency action, [the Montana Administrative Procedure Act (MAPA)] governs our review," and our scope of

6

review is limited. *Citizens Awareness Network v. Mont. Bd. of Envtl. Rev.*, 2010 MT 10, ¶ 13, 355 Mont. 60, 227 P.3d 583; *N. Fork Preservation Assn. v. Dept. of St. Lands*, 238 Mont. 451, 465, 778 P.2d 862, 871 (1989). We apply the same standards as the district court when we review a district court order affirming or reversing an agency decision. *Ostergren v. Dept. of Revenue*, 2004 MT 30, ¶ 11, 319 Mont. 405, 85 P.3d 738. "In a contested case, a district court reviews an administrative decision to determine whether the findings of fact are clearly erroneous and whether the agency correctly determined the law," and we will review the district court decision for the same. *Ray v. Mont. Tech of the U. of Mont.*, 2007 MT 21, ¶ 24, 335 Mont. 367, 152 P.3d 122; *Cenex Pipeline LLC v. Fly Creek Angus, Inc.*, 1998 MT 334, ¶ 22, 292 Mont. 300, 971 P.2d 781.

¶18 "A finding is clearly erroneous if it is not supported by substantial evidence, if the court misapprehended the effect of the evidence or if our review of the record convinces us that the court made a mistake." *Montanans v. State*, 2006 MT 277, ¶ 19, 334 Mont. 237, 146 P.3d 759.

¶19 We review the record to determine if the agency acted arbitrarily, capriciously, or unlawfully. *N. Fork*, 238 Mont. at 458-59, 778 P.2d at 867; *Kiely Constr. L.L.C. v. City of Red Lodge*, 2002 MT 241, ¶ 69, 312 Mont. 52, 57 P.3d 836 (citations omitted). Pursuant to Montana law,

> (2) The court may not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because:
> (a) the administrative findings, inferences, conclusions, or decisions are:

7

(i) in violation of constitutional or statutory provisions;

(ii) in excess of the statutory authority of the agency;

(iii) made upon unlawful procedure;

(iv) affected by other error of law;

(v) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record;

(vi) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Section 2-4-704(2)(a), MCA.

## DISCUSSION

¶20 *Issue One: Did the District Court act within its discretion when it denied Arlington's Petition for Leave to Present Additional Evidence and upheld the evidentiary rulings made by the Hearing Officer?*

¶21 As noted above, Arlington asked the District Court to receive additional evidence into the record, consisting of two job listings issued by Miller's—one issued in 2007 and the other in 2008. The court acknowledged that it could order the consideration of additional evidence, pursuant to § 2-4-703, MCA, which provides:

> If, before the date set for hearing, application is made to the court for leave to present additional evidence and it is shown to the satisfaction of the court that the additional evidence is material and that there were good reasons for failure to present it in the proceeding before the agency, the court may order that the additional evidence be taken before the agency upon conditions determined by the court. The agency may modify its findings and decision by reason of the additional evidence and shall file that evidence and any modifications, new findings, or decisions with the reviewing court.

¶22 The District Court found that Arlington did not explain or analyze how the two job listings substantiated or were material to his wage claim. The court further observed that Arlington failed to file a motion to compel discovery and did not provide "good reasons for failing to present the evidence during the proceeding before the agency." The District

8

Court also found that the Hearing Officer effectively ruled that the two job listings were inadmissible, as the job listings were excluded from the exhibits listed with the Hearing Officer's Order.

¶23 On appeal, Arlington provides us with the two job listings and asks us to consider them in support of his argument that the District Court erred in refusing to receive this additional relevant evidence. In response, Miller's asks that we strike the tendered job listing exhibits, as they were not a part of the record below. We agree with Miller's. We have consistently refused to accept or consider on appeal materials that were not part of the district court record. *Johnson v. Killingsworth*, 271 Mont. 1, 2-3, 894 P.2d 272, 273 (1995). We therefore decline to consider the contents of the job listings in resolving this appeal. However, this does not end our inquiry.

¶24 As described above, prior to his contested case hearing, Arlington diligently sought formal discovery of job orders posted and advertised by Miller's, in support of his contention that he had been offered a salary in excess of $60,000. Miller's objected to his requests and did not produce them. Arlington then sought to subpoena the orders, but the Bureau chose to ignore his request. In his findings and conclusions, the Hearing Officer specifically faulted Arlington for submitting no "corroborative evidence" for his salary claim, but precluded Arlington from offering the evidence he claims would have provided such corroboration.

¶25 Given that Arlington made concerted efforts within the discovery rules to secure the documents to support his case, we conclude that refusing him relief because he failed to file a motion to compel constitutes an overly rigid application of the rules of discovery.

9

Arlington's efforts were neither an "abuse [of] the dignity of the courtroom" nor a matter of prejudice to Miller's. *State v. Colt,* 255 Mont. 399, 408, 843 P.2d 747, 752 (1992) (quoting *Faretta v. California,* 422 U.S. 806, 834 n. 46, 95 S. Ct. 2525, 2541 (1975)). We therefore conclude that in failing to require Miller's to produce the duly requested material and excluding the tendered job listings for Arlington's failure to file a motion to compel, the Hearing Officer acted arbitrarily and capriciously, prejudicing the substantial rights of Arlington. Section 2-4-704(2)(a)(vi), MCA. We further conclude that the District Court likewise abused its discretion in affirming the exclusion of evidence and in refusing to admit the tendered evidence pursuant to its authority under § 2-4-703, MCA.

¶26 Based on the foregoing, we reverse and remand this matter to the District Court for remand to the Department for production and consideration of additional evidence. As provided in § 2-4-703, MCA, the court may order that the additional evidence be taken before the agency on conditions determined by the court, following which the agency may modify its findings and decisions by reason of the additional evidence, and shall file any further findings or decisions with the reviewing court. We take no position on the question of whether the additional evidence should change the Bureau's determination. We simply conclude that Arlington should have the opportunity to formally obtain the requested evidence from Miller's for due consideration in support of his arguments concerning the wages he submits were offered to him by Miller's.

¶27 *Issue Two: Does substantial evidence support the Hearing Officer's decision, affirmed by the District Court, that Miller's Trucking, Inc., did not have an oral employment agreement with Arlington to pay him between $60,000 and $70,000 per year?*

10

¶28 Given that we are reversing and remanding under Issue One with directions to allow Arlington to secure the formal production of the job listings in support of his wage claim, we decline at this juncture to determine whether substantial evidence supports the Hearing Officer's decision, as affirmed by the District Court, that Miller's did not have an oral agreement to pay Arlington between $60,000 and $70,000 per year.

¶29 *Issue Three: Did the Hearing Officer and the District Court correctly determine that Arlington engaged in activities of a character directly affecting the safety of the operation of motor vehicles in interstate commerce and is thus exempt from overtime requirements?*

¶30 Arlington argues on appeal that the Hearing Officer and the District Court erred when determining that Arlington engaged in activities affecting interstate commerce. The Hearing Officer found that Arlington's employment—transporting property by motor vehicles subject to the jurisdiction of the DOT Secretary (Secretary)—was of a character directly affecting the safety of operation of motor vehicles transporting passengers or property in interstate commerce. Because of this, and because Arlington was operating and maintaining one or more of Miller's trucks on public roads in Montana, the Hearing Officer determined Arlington engaged in the interstate transportation of goods, and was therefore within the overtime exemption of the Act and not entitled to overtime wages.

¶31 Both federal and Montana law require employers to pay employees overtime wages, unless an exemption applies. Under the federal Fair Labor Standards Act (FLSA) and Montana law, an employer is required to pay overtime of at least one and one-half times of an employee's regular rate of pay for hours worked in excess of forty hours per week. 29 U.S.C. § 207(a)(1) (2006); *Major v. Chons Bros., Inc.*, 53 P.3d 781, 784 (Colo.

11

2002); § 39-3-405, MCA. If an employer does not comply with this provision, an employee may maintain an action against the employer to recover unpaid minimum wages, unpaid overtime compensation, and possibly liquidated damages. 29 U.S.C. § 216(b) (2006); *Major*, 53 P.3d at 784; *see* §§ 39-3-407 and -207, MCA.

¶32 However, numerous exemptions exist under which employees are not eligible for overtime pay. *Thompson v. K.R. Denth Trucking, Inc.*, 2011 U.S. Dist. LEXIS 13941 at *8 (S.D. Ind. Feb. 11, 2011). One of the exemptions included in the FLSA is the Motor Carrier Act exemption (Exemption), which "specifically exempts from overtime pay any employee over 'whom the Secretary of Transportation has power to establish qualifications and maximum hours of service' pursuant to the provisions of Section 31502 of Title 49." *Thompson*, 2001 U.S. Dist. LEXIS at *8 (quoting 29 U.S.C. § 213(b)(1) (2006)); *see* § 39-3-406(2)(a), MCA. To the extent that property is transported by a motor carrier between a place in one State and a place in another State, the Secretary has jurisdiction over the transportation and the procurement of that transportation, and the Secretary may prescribe requirements for "qualifications and maximum hours of service of employees of, and safety of operation and equipment of, a motor carrier." 49 U.S.C. §§ 13501(1)(A), 31502(b)(1) (2006).

¶33 The Exemption applies to employees who:

> (1) Are employed by carriers whose transportation of passengers or property by motor vehicle is subject to [the Secretary of Transportation's] jurisdiction under section 204 of the Motor Carrier Act, and (2) engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act.

12

29 C.F.R. § 782.2(a) (2012) (citations omitted). Put more plainly, the Exemption applies to an employee who is: "(1) employed with a carrier subject to the power of the Secretary of Transportation; (2) engaged in activities directly affecting the operational safety of motor vehicles; and (3) engaged in interstate commerce." *Thompson*, 2011 U.S. Dist. LEXIS at *9 (emphasis omitted).

¶34 When evaluating the application of the Exemption, "FLSA exemptions 'are to be narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit.' " *Thompson*, 2011 U.S. Dist. LEXIS at *9 (quoting *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392, 80 S. Ct. 453, 456 (1960)); *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493, 65 S. Ct. 807, 809 (1945). The party asserting an exemption, usually the employer, bears the burden of showing the applicability of the exemption, and that the employer is "clearly and unmistakably within the spirit and the letter of [the exemption's] terms." *Major*, 53 P.3d at 784 (quoting *Pugh v. Lindsay*, 206 F.2d 43, 46 (4th Cir. 1953)). The applicability of the Exemption depends on the class to which the employer belongs and the class of and characteristics of the employee's work; it is not dependent upon the nature of the employer's activities. 29 C.F.R. § 782.2(a); *Major*, 53 P.3d at 784 (citing *Dole v. Solid Waste Servs., Inc.*, 733 F. Supp. 895, 929 (E.D. Pa. 1989), *aff'd*, 897 F.2d 521 (3d Cir. 1990); *Benson v. Universal Ambulance Serv., Inc.*, 675 F.2d 783, 786 (6th Cir. 1982)).

¶35 Arlington disputes the satisfaction of requirements (1) and (3) of the Exemption as set forth in ¶ 33, and therefore contends that the Exemption does not apply. As to

requirement (1), Arlington argues that all his shipments were intrastate and therefore outside of the jurisdiction of the Secretary. Specifically, Arlington contends that *he* was not subject to the jurisdiction of the Secretary and was therefore not exempt from the overtime requirements. While both Arlington and Miller's qualified as "motor carriers" under 49 U.S.C. § 13102(14) (2006 & Supp. IV 2010), which defined a "motor carrier" as "a person providing motor vehicle transportation for compensation,"[1] the test to satisfy requirement (1) is not if *Arlington* was subject to the jurisdiction of the Secretary, but rather if his employer, *Miller's*, was subject to the Secretary's jurisdiction. 29 C.F.R. § 782.2(a).

¶36    It is uncontested that Miller's was subject to the power of the Secretary. Miller's had the authority to engage in transportation as a contract carrier of property by motor vehicle in interstate or foreign commerce, as permitted by the DOT Federal Motor Carrier Safety Administration. Miller's was authorized to operate under the DOT Identification Number 762355 and Permit Number MC 392559 P. It operated in interstate commerce in Montana, Idaho, Wyoming, and Washington, and had trucks licensed for transportation in each of those four states. Where a corporation "holds itself out to the general public to engage in the transportation by motor vehicle in interstate or foreign commerce of passengers or property," then it is a motor carrier that is regulated by the Secretary. *Brennan v. Schwerman Trucking Co.*, 540 F.2d 1200, 1204 (4th Cir. 1976). Miller's held itself out to the public as available for interstate cartage, and as such, was within the definition of a common carrier by motor vehicle and subject to regulation by the

---

[1] "Person" within this definition includes corporations and companies. 1 U.S.C. § 1 (2006).

Secretary. The Hearing Officer found that Miller's was regulated by the Secretary. As these facts are uncontested, the first requirement of the Exemption is met.

¶37 As for the second and third requirements of the Exemption, we look to the nature of Arlington's work to determine if they are satisfied. Arlington does not contest the Hearing Officer's finding that he engaged in activities directly affecting the operational safety of motor vehicles. Arlington operated and maintained one or more of Miller's trucks, performing routine maintenance and safety checks on them. The second requirement of the Exemption is thereby satisfied. Because Arlington did not dispute this finding, we need not further address it.

¶38 Arlington vigorously argues that the third requirement of the Exemption does not apply to him. He argues that Miller's did not have the requisite intent to continue the transportation of the logs beyond state lines, the loads of logs he hauled constituted intrastate commerce rather than interstate commerce, and the loads of logs he hauled were regulated by the Montana Department of Transportation rather than by federal safety regulations.

¶39 "Clearly, the touchstone of the interstate commerce requirement is the *nature* of the employee's work, not the actual *percentage* of time spent traveling interstate." *Thompson*, 2011 U.S. Dist. LEXIS at *12. For the Exemption to apply to "a driver who has not driven in interstate commerce, evidence must be presented that the carrier has engaged in interstate commerce and that the driver *could reasonably have been expected to make one of the carrier's interstate runs*." *Thompson*, 2011 U.S. Dist. LEXIS at *12 (citation omitted). Moreover, "[w]here the employee's continuing job duties have *no*

15

*substantial direct effect* on the safety of operation of motor vehicles in interstate commerce, or where such activities are so trivial, casual, and insignificant as to be de minimis, the exemption does not apply." *Major*, 53 P.3d at 784 (citing *Opelika Royal Crown Bottling Co. v. Goldberg*, 299 F.2d 37, 43 (5th Cir. 1962)) (emphasis added); 29 C.F.R. § 782.2(b)(3). In *Major*, the plaintiff's interstate commerce activity as a tow truck driver involved nine out-of-state tows during three years of work. The court found that the plaintiff's job activities were "overwhelmingly" conducted intrastate, and that the nine out-of-state tows, which constituted interstate commerce activity, merely rose to the level of being de minimis interstate commerce activity, therefore precluding the application of the Exemption. *Major*, 53 P.3d at 784.

¶40    The facts before the Hearing Officer and the District Court established that Arlington never drove a log load outside the State of Montana nor did Miller's expect him to do so. Though Tony testified at the hearing that it would have been reasonable to ask Arlington to transport a load of logs out of Montana, Miller's never made such a request. In fact, Miller's even noted that Arlington was not to deal in interstate commerce in its response to Arlington's wage claim. Miller's was presented with the following question with respect to Arlington's wage claim:

> DID THE CLAIMANT DEAL IN INTERSTATE COMMERCE? (SUCH AS INDIVIDUALS INVOLVED IN INTERSTATE TRUCKING, CREDIT CARDS [sic] TRANSACTIONS, MAIL AND/OR TELEPHONE TRANSACTIONS WITH OTHER STATES).

Miller's marked "NO" as the answer. Though Miller's was engaged in interstate commerce, the evidence establishes that Arlington, as a driver for Miller's, was not reasonably expected to make even one interstate drive for Miller's.

¶41 Moreover, it does not appear that Miller's *intended* to transport Arlington's intrastate log loads in interstate commerce. To constitute interstate commerce, the shipper must have a "fixed and persisting intent" to transport the goods beyond the terminal storage point at the time of shipment. 29 C.F.R. § 782.7(b)(2) (2012). The intent is *not* fixed and persisting where:

> (i) At the time of shipment there is no specific order being filled for a specific quantity of a given product to be moved through to a specific destination beyond the terminal storage, and (ii) the terminal storage is a distribution point or local marketing facility from which specific amounts of the product are sold or allocated, and (iii) transportation in the furtherance of this distribution within the single State is specifically arranged only after sale or allocation from storage.

29 C.F.R. § 782.7(b)(2).

¶42 The record reflects that Miller's, as the original shipper, controlled the logs from the point where they were cut and Arlington collected them, to the point of delivery, typically at a railroad yard in Laurel, Montana. According to Tony's hearing testimony, Miller's was paid for the logs when they crossed a certified scale in Laurel, at which point Miller's had no further ownership interest in the logs. The logs were then transported by rail to Smurfit-Stone's log yard in Frenchtown, Montana, after which Smurfit-Stone made all subsequent transportation decisions and arrangements involving the logs, including a determination of the final destinations of the log byproducts and whether those destinations were inside or outside of Montana.

17

¶43   While a considerable amount of the log byproducts was eventually transported in interstate commerce, it does not appear that Miller's had a fixed intent at the time of shipment, within the meaning of the regulation, to deliver the logs to any destination but one in Montana.  Arlington transported the logs only within Montana to one or two log yards, and at the time of transport, Miller's issued no specific orders to transport the logs or log byproducts outside of Montana.  Therefore, the interstate movement did not begin during Arlington's intrastate transports as movements of the log byproducts to points outside of Montana had not yet begun.  Thus, the transportation within Montana did not form "a 'practical continuity of movement' across State lines from the point of origin to the point of destination."  29 C.F.R. § 782.7(b)(1) (citations omitted).

¶44   As in *Solis v. R.M. Intl., Inc.*, 2012 U.S. Dist. LEXIS 35888 at \*\*13-14 (D. Or. Mar. 16, 2012), where the defendants did not meet their burden to prove that the Exemption "plainly and unmistakably" applied to their drivers who only drove intrastate routes, we find that Miller's similarly did not carry its burden of proving that the Exemption plainly and unmistakably applied to Arlington.

¶45   We conclude that the Exemption is not applicable to Arlington.  The contrary findings by the Hearing Officer and the District Court were not supported by substantial evidence and, as a matter of law, they inadequately applied and addressed the components of the test for determining what transport is considered interstate commerce.

## CONCLUSION

¶46   Based on the foregoing, we reverse the determination that Arlington engaged in the interstate transportation of goods and that his work was within the overtime

18

exemption of the Act. We therefore remand to the District Court for remand to the Department for production and consideration of additional evidence, a determination of whether this evidence bears on Arlington's claim that there was an oral employment agreement for wages of over $60,000 per year, and a determination of the amount of overtime pay owing from Miller's to Arlington.

¶47 Reversed and remanded.

/S/ PATRICIA COTTER

We concur:

/S/ MIKE McGRATH
/S/ BRIAN MORRIS
/S/ BETH BAKER
/S/ JAMES C. NELSON