FILED

05/19/2026

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 25-0630

DA 25-0630

IN THE SUPREME COURT OF THE STATE OF MONTANA

2026 MT 108

IN RE THE MARRIAGE OF:

LYNLEA A. CLINE,

      Petitioner and Appellee,

  and

DAVID R. PRITCHARD,

      Respondent and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DR-24-433
Honorable John W. Larson, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

        David R. Pritchard, Self-Represented, Missoula, Montana

    For Appellee:

        Thomas H. Stanton, Wells & McKittrick, P.C., Missoula, Montana

            Submitted on Briefs: April 15, 2026

               Decided: May 19, 2026

Filed:

_____
Clerk

Justice Katherine M. Bidegaray delivered the Opinion of the Court.

¶1 David Pritchard appeals pro se various orders of the Montana Fourth Judicial District Court entered during dissolution proceedings involving his former wife, Lynlea Cline. We address the following restated issues:

1. *Whether the District Court abused its discretion in denying Pritchard's motions to set aside the Final Decree.*

2. *Whether the District Court abused its discretion in awarding Cline a share of equity in the parties' marital home.*

3. *Whether Cline is entitled to sanctions.*

Pritchard contends he lacked notice of proceedings and that the District Court's Final Decree unlawfully awarded Cline equity in the parties' marital home. Cline denies Pritchard's claims and asks this Court to sanction him for a frivolous appeal. We affirm the District Court on all matters and deny Cline's request for sanctions.

## FACTUAL AND PROCEDURAL BACKGROUND

**Dissolution Proceedings: Default Judgment and Final Decree**

¶2 After 12 years of marriage, Cline filed a dissolution petition on June 19, 2024, in the Fourth Judicial District Court, asking the court to dissolve the parties' marriage and equitably distribute their marital property and debts if the parties were otherwise unable to agree on distribution. On June 21, 2024, the District Court issued a summons to Pritchard, ordering him to answer the petition within 21 days of service and warning: "If you fail to appear or answer, judgment will be taken against you by default for the relief demanded in the petition." The summons included a temporary economic restraining order. A process

server certified personal service of the petition and summons on Pritchard at his home address in Missoula on October 31, 2024.

¶3 On December 2, 2024, after Pritchard failed to respond or otherwise appear, Cline filed a request for entry of default, which the district court clerk issued that day. Cline's attorney certified service of the request for and notice of entry of default on Pritchard by email. Pritchard later argued that email service was improper under M. R. Civ. P. 5 because he had not consented to electronic service. In later court filings, Pritchard included a copy of Cline's December 3, 2024 email to him showing the request for and notice of entry of default attached. Pritchard also later referenced arguments Cline's lawyer made "when he submitted for default" in text messages Pritchard submitted to the District Court, further indicating notice of the entry of default. Nevertheless, Pritchard still did not appear.

¶4 One week later, Cline filed a request for hearing on the uncontested dissolution matter, certifying service of the hearing request on Pritchard by email. By order dated December 13, 2024, the court set a hearing on the dissolution matter for January 2, 2025, and, according to the order, copied Pritchard. Pritchard later denied receiving any notice of the hearing and submitted emails from the clerk of court confirming that the clerk's office did not send Pritchard the court's setting order.[1] As discussed below, we need not resolve whether Pritchard actually received separate notice of the January 2, 2025 hearing because he had not appeared before default judgment was sought.

---

[1] Pritchard did not file evidence of this email exchange with the court, however, until August 29, 2025, after the court's order on his second motion to set aside the decree.

¶5	At the January 2, 2025 hearing, which Pritchard did not attend, Cline testified as to her proposed distribution of the marital estate. That same day, the District Court issued its Findings of Fact, Conclusions of Law, and Final Decree, copying Pritchard. As pertinent to this appeal,[2] the court ordered that Pritchard would receive the parties' marital home in Missoula, but that he must remove Cline from any associated liability and pay Cline "$100,000 from the equity of the residence" within 90 days of the decree.[3] After that, Pritchard could receive the property. But, if he failed to remove Cline from liability or pay her $100,000 within the 90-day timeframe, the house was to be listed and sold immediately, and Cline was to receive $100,000 of the net proceeds and Pritchard the remainder.

**Pritchard's First Rule 55(c)/60(b) Motion to Set Aside the Final Decree**

¶6	On January 28, 2025, Pritchard filed a pro se M. R. Civ. P. 55(c)/60(b) motion to set aside the default judgment on two primary grounds: he had no notice of the January 2025 hearing and believed he did not have to respond to Cline's petition, and the $100,000 equity award was unsupported and inequitable.

¶7	In his supporting affidavit, Pritchard admitted he was personally served but did not respond or appear in the proceedings because Cline told him he did not have to. Also, believing their ongoing negotiations "regarding . . . the equity in the marital home" would be resolved "without court intervention," Pritchard claimed the $100,000 equity award

---

[2] Pritchard stated below and on appeal that he "does not challenge the dissolution itself, the parenting plan, or any non-property aspect of the decree." We therefore do not address any other aspect of distribution under the decree beyond the disputed $100,000 equity award.

[3] The record shows the parties financed the purchase of their marital home through a U.S. Department of Veterans Affairs loan (a VA loan).

4

"came as a surprise" because they had not settled on a dollar amount and Cline did not state one in her petition. Pritchard repeatedly asserted that he did not contest awarding Cline a share of the home's equity, but instead disagreed with the $100,000 award, arguing it was based on a "general market evaluation of the area" and not an actual home appraisal.[4]

¶8 Cline disputed all Pritchard's claims. She personally handed Pritchard the dissolution petition days after filing it, but he refused to sign the acknowledgment of service, so she hired a process server who personally served Pritchard with the dissolution petition and summons on October 31, 2024. Cline denied telling Pritchard not to respond, and asserted Pritchard instead intentionally declined to respond or appear. Cline also stated that the $100,000 equity award was based on a "market analysis" that the parties' realtor prepared and insisted the award was equitable.

¶9 In reply, Pritchard admitted Cline handed him the dissolution documents on June 24, 2024, and he opened them in her presence. Pritchard explained he did not sign the acknowledgment of service because he believed it unnecessary given his being personally served.[5] He also admitted that, though he started to, he "did not respond in writing to the court," but only because of Cline's representations. Pritchard included

---

[4] For example, Pritchard said in briefing, "I am NOT contesting that Ms. Cline is entitled to an appropriate share of equity in the home" and "I cannot state this enough, I do believe Ms. Cline is entitled to equity out of the home." He also supplied text messages wherein he told Cline the same, i.e., "you said you needed some equity which I agreed and believe you're entitled to" and "I said and still believe that you are entitled to some equity out of the house."

[5] Cline's June 24, 2024 delivery of the petition alone did not constitute service of process because the summons and petition must be served together. M. R. Civ. P. 4(d)(1). Personal service was accomplished on October 31, 2024, when the process server delivered the petition and summons to Pritchard. M. R. Civ. P. 4(e)(1).

county property tax assessment documents, a string of text messages, and various emails as proof that he lacked notice of the January 2, 2025 default dissolution hearing and that Cline's property valuation was incorrect.

¶10 On March 10, 2025, the District Court issued an order denying Pritchard's motion to set aside the default judgment. The court concluded Pritchard had actual notice of the dissolution proceeding for six months prior to entry of the Final Decree in January 2025, yet he failed to respond or appear at any time. Also, Pritchard's documentation did not establish any inequity, so the court sustained the decree.

**Pritchard's Second Rule 55(c)/60(b) Motion to Set Aside the Final Decree**

¶11 On April 1, 2025, two days before expiration of the 90-day timeframe to pay Cline $100,000 and remove her from liability on the home, Pritchard filed a motion for a 90-day extension of the decree deadline. He asserted he was in the process of refinancing, waiting on appraisal, and needed an extension to finalize and satisfy his obligations under the decree. That same day, the District Court issued an order extending the deadline to July 8, 2025.

¶12 On July 18, 2025, ten days past the new deadline, Pritchard filed a second M. R. Civ. P. 55(c)/60(b) motion to set aside the Final Decree. His second motion was based on the same two grounds as his first: lack of notice and improper distribution of the marital home. This time, however, Pritchard added new arguments in support of his claims. In addition to lack of notice, Pritchard claimed, for the first time, that any service on him by email was improper because he did not consent to email service under M. R. Civ. P. 5. And, in addition to his prior claim disputing the amount of equity awarded, Pritchard

6

asserted, for the first time, that, by awarding Cline equity in the home, the court unlawfully distributed to her his veterans' disability benefits, which he said were used to pay the home mortgage.[6, 7]

¶13 Cline responded that Pritchard's claims regarding notice and distribution of the marital home were previously raised and decided in the court's March 10, 2025 order denying his first motion to set aside the Final Decree. The parties also continued to argue in response and reply over whether Pritchard received notice of the January 2, 2025 hearing.

¶14 On August 13, 2025, the District Court issued an order denying Pritchard's second motion to set aside the Final Decree on the grounds that it had previously decided his claims when it denied his first motion. Pritchard timely appealed pro se.

## STANDARD OF REVIEW

¶15 On review of a district court's denial of a motion to set aside a default judgment, "the finding of even a slight abuse of discretion is sufficient to reverse the order." *In re Marriage of Shannon*, 2004 MT 25, ¶ 4, 319 Mont. 357, 84 P.3d 645. Ordinarily, a ruling on a M. R. Civ. P. 60(b) motion is reviewed for abuse of discretion, but Montana

---

[6] Pritchard cited *Howell v. Howell*, 581 U.S. 214, 137 S. Ct. 1400 (2017), *In re Marriage of Strong*, 2000 MT 178, 300 Mont. 331, 8 P.3d 763, and 38 U.S.C. § 5301.

[7] Pritchard also made additional new arguments, most of which he has abandoned on appeal. He has maintained, however, an unspecified claim of judicial impropriety, presumably because the presiding judge in the dissolution matter also presided, at least for a time before he recused himself, over a contemporaneous civil matter where Pritchard and Cline were co-plaintiffs. Beyond citing cases where this Court overturned the judge's decisions on appeal, Pritchard provides not a scintilla of record evidence to support his partiality claim and we therefore do not address it beyond noting it was made.

applies more searching review when the ruling concerns relief from a default judgment. *Orcutt v. Orcutt*, 2011 MT 107, ¶¶ 5-6, 360 Mont. 353, 253 P.3d 884.

¶16 We review a district court's division of marital property to determine whether the court's findings of fact are clearly erroneous, and its legal conclusions are correct. If the findings are not clearly erroneous, we will affirm the distribution of property unless the court abused its discretion. *Collins v. Collins*, 2004 MT 365, ¶ 16, 324 Mont. 500, 104 P.3d 1059. A court abuses its discretion if it misapplies controlling law or acts arbitrarily, without conscientious judgment, resulting in substantial injustice. *Bessette v. Bessette*, 2019 MT 35, ¶ 13, 394 Mont. 262, 434 P.3d 894.

¶17 We review questions of federal preemption and statutory interpretation de novo. *In re Marriage of Strong*, 2000 MT 178, ¶ 11, 300 Mont. 331, 8 P.3d 763. Our review of alleged due process violations is plenary. *State v. Villanueva*, 2021 MT 277, ¶ 23, 406 Mont. 149, 497 P.3d 586.

## DISCUSSION

¶18 Pritchard attacks the District Court's January 2025 Final Decree and decisions on his post-decree motions to set it aside.[8] His arguments are many. At bottom, Pritchard claims the District Court should have set aside the Final Decree because (1) he had no notice of the January 2, 2025 final dissolution hearing and (2) the court improperly and/or

---

[8] In his notice of appeal, Pritchard only specifically identifies the Final Decree and August 13, 2025 order but states he is also appealing "all related orders . . . to the extent that they address the division of property." Accordingly, we consider both the March 10 and August 13, 2025 orders on appeal. Additionally, simultaneous to his appeal, Pritchard sought a stay of execution of judgment and waiver of supersedeas bond, claiming indigency, which Cline opposed and the District Court denied. Pritchard does not challenge this ruling on appeal.

8

unlawfully awarded Cline $100,000 in equity both because the equity award was not supported by the evidence and because the home's equity was "derived solely" from his veterans' disability benefits, which the court could not lawfully distribute as marital property. Cline contends that Pritchard received all notice due; the $100,000 equity award was supported by her uncontroverted hearing testimony; and Pritchard's disability benefits lost their identity as such when used to make mortgage payments. Cline also asks this Court to sanction Pritchard for pursuing this appeal.

¶19   *1. Whether the District Court abused its discretion in denying Pritchard's motions to set aside the Final Decree.*

¶20   M. R. Civ. P. 55(c) sets a "good cause" standard for setting aside "an entry of default." By contrast, M. R. Civ. P. 60(b) governs setting aside "a default judgment." *See* M. R. Civ. P. 55(c); *Essex Ins. Co. v. Jaycie, Inc.*, 2004 MT 278, ¶¶ 10-12, 323 Mont. 231, 99 P.3d 651; *Green v. Gerber*, 2013 MT 35, ¶¶ 40-41, 369 Mont. 20, 303 P.3d 721; *accord Cribb v. Matlock Comm.*, 236 Mont. 27, 30, 768 P.2d 337, 339 (1989) (an entry of default "is simply an interlocutory order that in itself determines no rights or remedies, whereas the default judgment is a final judgment that terminates the litigation and decides the dispute" (citation omitted)). Because Pritchard sought relief from a final decree entered after default, we analyze the post-judgment rulings under Rule 60(b), while applying the more searching review applicable to default judgments.

9

¶21 Rule 60(b) gives a court discretion to grant relief from a final judgment for numerous enumerated reasons. In his post-decree motions,[9] citing Rule 60(b)(1), (2), (3), (4), and (6), Pritchard asserted he was entitled to setting aside the Final Decree for lack of notice, surprise, excusable neglect, newly discovered evidence, fraud and misrepresentation, void judgment, and extraordinary circumstances.

¶22 As a threshold matter, beyond general assertion, Pritchard did not identify any specific evidence of fraud by the opposing party as required by Rule 60(b)(3). *See In re Marriage of Weber*, 2004 MT 211, ¶¶ 25-26, 322 Mont. 341, 96 P.3d 716 (fraud requires some showing of intentional concealment preventing "a fair submission of the controversy"). Nor did Pritchard establish surprise under Rule 60(b)(1); exhibits he submitted plainly showed he knew of the realtor's "market analysis" prior to Cline filing for divorce and that Cline told him in May 2024 that, based on that valuation, she would be entitled to as much as $175,000 in equity. Also, Pritchard's "newly discovered evidence" was only that his veterans' disability benefits paid the mortgage and other associated costs of purchasing the marital home. But Pritchard failed to show how this "new" evidence satisfied Rule 60(b)(2), i.e., how it was not previously discoverable despite due diligence. *See In re Matter of B.B.*, 2001 MT 285, ¶ 40, 307 Mont. 379, 37 P.3d 715 (listing four-factor test for entitlement to relief from judgment based on newly discovered evidence); *Weber*, ¶ 29. Pritchard was not entitled to Rule 60(b) relief for any of these above reasons.

---

[9] Pritchard's January 2025 motion to set aside the default judgment and July 2025 motion for relief from judgment blended the requirements of Rules 55(c) and 60(b).

10

¶23 We now turn to Pritchard's remaining claims under Rule 60(b)(1), (4), and (6)—excusable neglect, lack of notice, void judgment, and extraordinary circumstances.

**Excusable Neglect**

¶24 The M. R. Civ. P. 60(b)(1) "excusable neglect" standard requires some degree of diligence by the defaulted party. *Essex*, ¶¶ 10-12; *JAS, Inc. v. Eisele*, 2014 MT 77, ¶ 34, 374 Mont. 312, 321 P.3d 113. There can be no excusable neglect "where a defendant has willingly slumbered on his rights and ignored the judicial machinery established by law." *Dudley v. Stiles*, 142 Mont. 566, 568, 386 P.2d 342, 343 (1963).

¶25 Here, the record established that Cline personally handed Pritchard the dissolution petition on June 24, 2024, according to Pritchard's own admission; Pritchard possessed the dissolution petition and summons as of August 15, 2024, according to his own emails submitted to the court; and a process server personally served Pritchard with the petition and summons on October 31, 2024. The summons expressly stated that Pritchard's failure to respond or appear would result in a default judgment against him for Cline's requested relief. Despite this warning, Pritchard, again by his own admission, "did not respond in writing to the court" or otherwise appear in the proceedings.

¶26 The District Court, in its discretion, rejected Pritchard's post-decree excuse that he defaulted because Cline told him he did not have to respond. We will not disturb the court's determination that Pritchard had notice of the dissolution action, failed to answer, and allowed default to be entered. Pritchard was not entitled to Rule 60(b)(1) relief for excusable neglect.

**Void Judgment for Lack of Notice/Jurisdiction and Due Process Violation**

¶27 Pritchard made several arguments on this point, namely that lack of proper service deprived the District Court of jurisdiction to enter the Final Decree and that his lack of notice of the January 2, 2025 hearing violated due process and rendered the Final Decree void. A judgment may be challenged as void under M. R. Civ. P. 60(b)(4) for lack of jurisdiction. *See Greater Missoula Area Fedn. of Early Childhood Educators v. Child Start, Inc.*, 2009 MT 362, ¶ 21, 353 Mont. 201, 219 P.3d 881.

¶28 First, the District Court obtained personal jurisdiction over Pritchard through personal service of the dissolution petition and summons on October 31, 2024. *See* M. R. Civ. P. 4(d)(1), (e)(1), 5(b)(2)(A). The District Court's subject matter jurisdiction over the dissolution and marital property issues arose from Montana's dissolution statutes and the parties' Montana domicile, not from service itself. Personal service, however, gave Pritchard formal notice of the action and subjected him to the court's authority to enter judgment, including a default judgment if he failed to answer or otherwise appear.

¶29 Pritchard nevertheless argues that the Final Decree is void because he received no separate notice of the January 2, 2025 default prove-up hearing. The record on that point is not clean. Cline certified email service of the hearing request, and the District Court's later order stated that the clerk forwarded the notice of hearing. Pritchard, however, submitted correspondence from the clerk's office stating that the clerk's office did not send him the hearing notice after default had been entered. We need not resolve that factual dispute. Even assuming Pritchard did not receive separate notice of the January 2, 2025

12

hearing, the rules did not require written notice of the default-judgment hearing because Pritchard had not appeared.

¶30 "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." M. R. Civ. P. 55(a). After the clerk of court entered Pritchard's default, Cline proceeded to seek a default judgment on her uncontested dissolution petition. M. R. Civ. P. 55(b)(2) provides that, "[i]f the party against whom a default judgment is sought *has appeared personally or by a representative*, that party . . . must be served with written notice of the application [for default judgment] at least 7 days before the hearing." (Emphasis added.) Because Pritchard had not "appeared personally or by a representative," he was not entitled to notice of the default judgment hearing under Rule 55(b)(2).

¶31 To Pritchard's final point, due process requires notice and an opportunity to be heard. *In re Marriage of Fishbaugh*, 2002 MT 175, ¶ 15, 310 Mont. 519, 52 P.3d 395 (due process is accorded where a party is given sufficient notice of a proceeding, "regardless of whether the party actually avails himself of the opportunity to be heard"). Pritchard received both: he was properly served with the petition and summons and had an opportunity to respond but chose not to respond and thereby was defaulted. Due process did not require the District Court to provide a second opportunity to contest the property distribution after Pritchard failed to appear in the action and allowed default to be entered. The District Court did not abuse its discretion in declining to set aside the Final Decree for lack of notice.

13

**Void Judgment for Distribution of Veterans' Disability Benefits in Violation of Federal Law**

¶32    Pritchard also claimed the Final Decree should be set aside as void due to the District Court's unlawful distribution of his veterans' disability benefits.  Pritchard says the $100,000 equity award "necessarily transferred federally protected income" to Cline in violation of federal law.  By his logic, his veterans' disability benefits "paid every mortgage payment," so "equity exists solely because of" those protected benefits.

¶33    The District Court declined to consider this new argument in Pritchard's second post-decree motion, having previously decided that distribution of the marital home was equitable.  However, the question presented in Pritchard's claim for relief under Rule 60(b)(4) is not one of equity, but of legality.  Whether the Final Decree was void because the court lacked authority to distribute Pritchard's veterans' disability benefits presents a legal question subject to de novo review.  *See Strong*, ¶ 11.  Although the District Court did not separately analyze Pritchard's federal-preemption theory, we will affirm a lower court where it reaches the correct result, even for the wrong reason. *Essex*, ¶ 16; *State v. Christensen*, 2014 MT 294, ¶ 12, 377 Mont. 7, 338 P.3d 45.

¶34    Pritchard is incorrect that the $100,000 equity award and his veterans' disability benefits are the same thing, either in form or substance.  He relies on *Howell v. Howell*, 581 U.S. 214, 137 S. Ct. 1400 (2017), and *Strong*, but these cases are distinguishable.

¶35    *Howell*, applying *Mansell v. Mansell*, 490 U.S. 581, 109 S. Ct. 2023 (1989), overturned a state court decision ordering a husband to reimburse his ex-wife for a reduction in her share of his military retirement benefits after the husband later waived a

14

portion of those retirement benefits to receive disability compensation for a later-diagnosed service-connected disability. *Howell*, 581 U.S. at 220-23, 137 S. Ct. at 1405-06 ("federal law completely preempts the States from treating waived military retirement pay as divisible community property"). In other words, *Howell* governs distribution of military retirement benefits waived to receive disability benefits and indemnification orders designed to replace the waived retirement pay. Those circumstances are not at issue here, so Pritchard's reliance on *Howell* is misplaced.

¶36    *Howell*'s underpinning, *Mansell*, however, did inform our decision in *Strong*, a case not about military retirement benefits but about whether veterans' disability benefits can be awarded to a spouse "as part of the equitable distribution of marital property." *Strong*, ¶¶ 13-17, 20, 27. The trial court in *Strong* awarded the ex-wife a $5,000 promissory note and the remaining $1,440 balance of a lump-sum back-pay disability benefits award; the husband's sole source of income was his veterans' disability pay. *Strong*, ¶¶ 12, 35-36. We held that the USFSPA[10] precluded such an award because, under *Mansell* and our caselaw applying it,[11] 10 U.S.C. § 1408 allows distribution as marital property only "disposable retired pay," which, by its definition, excludes disability benefits received under U.S.C. Title 38. In short, due to federal preemption in the area, a Montana court is not allowed to consider or divide a spouse's veterans' disability benefits as marital

---

[10] The Uniformed Services Former Spouses Protection Act, 10 U.S.C. § 1408 (1982).

[11] *In re Marriage of Murphy*, 261 Mont. 263, 862 P.2d 1143 (1993).

15

property. *Strong*, ¶¶ 18-27.[12] *Strong* therefore protects veterans' disability benefits themselves from division as marital property; it does not hold that every asset purchased with funds traceable to disability benefits remains exempt from equitable distribution indefinitely.

¶37 *Strong* is inapplicable here because the District Court did not award Cline any amount of Pritchard's veterans' disability benefits. Instead, the court awarded her $100,000 equity in the parties' marital home. The court ordered that Pritchard was to receive the home upon removing Cline from the loan and then paying her $100,000 for her share of the equity. Pritchard did not do as ordered—either within the decreed 90-day timeframe or the later 90-day extension. Accordingly, under the decree, the home is to be sold and Cline to receive $100,000 "from [the] sale," with Pritchard receiving "any remaining net proceeds." The decree thus operates on the marital residence and sale proceeds from that residence, not on future veterans' disability payments or a segregated disability benefits account.

¶38 Pritchard's assertion that his veterans' disability benefits funded the mortgage payments does not make the home equity exempt from equitable distribution. The exempt status granted "payments of benefits due or to become due" under 38 U.S.C. § 5301 does not "extend to any property purchased in part or wholly out of such payments." 38 U.S.C. § 5301(a)(1); *Porter v. Aetna Casualty & Surety Co.*, 370 U.S. 159, 160-61,

---

[12] However, the USFSPA does not preempt state court authority to consider veterans' disability benefits as part of a party's overall financial circumstances, *Strong*, ¶¶ 31-35, or order a spouse to satisfy child support or maintenance obligations with disability-benefits-derived income, *Rose v. Rose*, 481 U.S. 619, 107 S. Ct. 2029 (1987).

82 S. Ct. 1232, 1232-33 (1962). Rather, once "converted into permanent investments," veterans' disability benefits lose "the quality of moneys" and thereby their exempt status. *Porter*, 370 U.S. at 160-61 n.3, 82 S. Ct. at 1232-33 (unlike benefits that, once deposited, remain immediately "subject to demand and use as the needs of the veteran for support and maintenance require[]" (citation omitted)). *Accord Bischoff v. Bischoff*, 987 S.W.2d 798, 799-800 (Ky. Ct. App. 1998) (veterans' disability benefits "lost their exempt status when invested in the parties' residence"); *Pfeil v. Pfeil*, 341 N.W.2d 699, 702-03 (Wis. Ct. App. 1983) (veterans' disability benefits lost exempt status when "invested in [a] mortgage note" and "real estate purchase[s]"); *Gray v. Gray*, 1996 OK 84, ¶¶ 11-14, 922 P.2d 615 (reversed trial court decision that personal property "traceable" to veterans' disability benefits was spouse's indivisible separate property; "once he converted those benefits to personal property the exempt status of those funds was lost"). As in these cases, once Pritchard converted his veterans' disability benefits into mortgage payments to fund the purchase of the parties' marital property, their protected status was lost.

¶39 The District Court did not accomplish indirectly what federal law forbids directly. It did not divide disability benefits; it divided marital home equity. The court's $100,000 equity award to Cline therefore did not violate the USFSPA, U.S.C. Title 38, or any other federal or state law. Even though the court did not specifically address Pritchard's benefits claim, the Final Decree was not void and Pritchard was therefore not entitled to relief under Rule 60(b)(4).

**Extraordinary Circumstances**

¶40   Finally, Rule 60(b)(6) permits relief from judgment for "any other reason that justifies relief." Rule 60(b)(6) is not a lower-standard catch-all ground for relief—it is designed primarily for extraordinary situations where a party is wronged through no fault of his or her own. *Green*, ¶¶ 41-43; *Estate of Kinnaman v. Mt. W. Bank, N.A.*, 2016 MT 25, ¶¶ 29-31, 382 Mont. 153, 365 P.3d 486. *See also Detienne v. Sandrock*, 2017 MT 181, ¶ 41, 388 Mont. 179, 400 P.3d 682 (Rule 60(b)(6) is only an available ground for relief "upon a showing that subsections (1) through (5) of Rule 60(b) do not apply").

¶41   Pritchard claimed his lack of notice of the January 2, 2025 hearing qualified as "extraordinary circumstances" warranting relief. However, as decided, Pritchard failed to respond or appear before entry of default and did not move to set aside the default judgment until after the Final Decree was entered. Accordingly, Pritchard failed to show he was "blameless" for the default judgment. *Green*, ¶ 42 (movant's burden under Rule 60(b)(6) to show extraordinary circumstances *and* blamelessness). Nor did Pritchard's second post-decree motion identify any extraordinary circumstance that could not have been raised in his first motion. We hold that the District Court correctly denied relief under Rule 60(b).

¶42   *2. Whether the District Court abused its discretion in awarding Cline a share of equity in the parties' marital home.*

¶43   Courts are vested with broad authority under § 40-4-202, MCA, to apportion a marital estate in a manner equitable to both parties under the particular circumstances. *In re Marriage of Funk*, 2012 MT 14, ¶ 6, 363 Mont. 352, 270 P.3d 39. Although courts must render findings "sufficient as a whole to manifest an equitable division of the marital

18

estate," § 40-4-202 "does not require a strict, itemized accounting and valuation of every marital asset and liability in every case." *In re Marriage of Edler & Mahlum*, 2020 MT 91, ¶ 9, 399 Mont. 532, 462 P.3d 209. That principle is particularly relevant when the party contesting valuation failed to appear before entry of the decree and left the other party's claims unchallenged.

¶44 The only aspect of the Final Decree Pritchard contests is the $100,000 equity award. The District Court based this award on Cline's testimony that she and Pritchard co-owned the parties' marital home and that her proposed distribution—Pritchard keeps the house and pays Cline her share of the equity—was fair and equitable. The evidentiary record supporting the exact $100,000 figure was limited. But given Pritchard's default and nonappearance, the District Court had before it only Cline's sworn testimony and proposed decree, and Pritchard did not present competing valuation evidence before judgment. Under that posture, the court did not abuse its discretion by adopting the uncontroverted proposed distribution.

¶45 Instead of availing himself of the forum and opportunity to challenge Cline's equity claim prior to entry of the Final Decree, despite notice of the dissolution action and summons, Pritchard instead chose to dispute the court's equity award after the fact. His burden was therefore higher in post-judgment proceedings. Pritchard had to show not merely that he disagreed with the valuation, but that the court's decision should be set aside under Rule 60(b). Pritchard submitted documents purporting to contradict or at least call into question Cline's $100,000 equity claim by showing that the realtor's assessment Cline relied on was outdated or not a true appraisal. But those materials did not establish that the

19

District Court lacked authority to enter the decree, that the decree was void, or that the valuation information could not have been presented earlier through reasonable diligence. When considering Pritchard's post-decree motions, the District Court, in its discretion, determined that Pritchard failed to show the Final Decree was inequitable. For all the reasons stated above, this was also not an abuse of the court's discretion.

¶46 For the first time on appeal, Pritchard submits a September 2025 "Comparative Market Analysis" and October 2025 "Seller Net Sheet" prepared by the parties' realtor and copies of email exchanges regarding these documents. He calls this "new evidence" that supports his valuation of the marital home. These documents were prepared after the District Court's decisions on review, were not part of the record, and we will not consider them. *Arlington v. Miller's Trucking, Inc.*, 2012 MT 89, ¶ 23, 364 Mont. 534, 277 P.3d 1198. Even if considered only for context, the documents are later market estimates and seller-net calculations, not proof that the District Court's January 2025 Final Decree was clearly erroneous or that Rule 60(b) relief was required.

¶47 Based on the record here as a whole, and under the unique circumstances of this case, *Funk*, ¶ 6, the District Court did not abuse its discretion in awarding Cline $100,000 equity in the parties' marital home. Nor did the court abuse its discretion in denying post-judgment relief from that award.

¶48 *3. Whether Cline is entitled to sanctions.*

¶49 Cline asks this Court to sanction Pritchard under M. R. App. P. 19 for what she considers a dilatory, vexatious, and frivolous appeal. She insists Pritchard filed his post-decree motions and appeal only to prolong payment of the equity award and drive her

into financial ruin. Cline, through her counsel, critiques Pritchard's briefing, claiming his arguments are unsupported and have no merit. True, Pritchard's pro se briefing is not perfect, but this Court generally affords leeway to pro se parties so long as there is no prejudice to the other party. *Greenup v. Russell*, 2000 MT 154, ¶ 15, 300 Mont. 136, 3 P.3d 124. Answering Pritchard's pro se appeal, however challenging given his imprecise arguments and citations, is not prejudicial, especially when a briefing schedule is extended, as it was here. And although Pritchard's arguments ultimately fail, his notice and federal-preemption arguments were not so wholly baseless as to justify sanctions.

¶50 This Court may, under M. R. App. P. 19(5), award sanctions to a prevailing party upon determining that an appeal is "frivolous, vexatious, filed for purposes of harassment or delay, or taken without substantial or reasonable grounds." Sanctions are only warranted "where the appeal is entirely unfounded and intended to cause delay," or where a party's actions "otherwise constitute an abuse of the judicial system." *Little Big Warm Ranch, LLC v. Doll*, 2018 MT 300, ¶ 22, 393 Mont. 435, 431 P.3d 342 (citation omitted). Pritchard's pro se post-decree motions and appeal were permitted under the rules, timely, and not dilatory. Pritchard's post-decree conduct was not objectively vexatious. Because the appeal was not entirely unfounded and the record does not show an abuse of the judicial system, we decline to order sanctions.

## CONCLUSION

¶51 We hold that the District Court did not abuse its discretion in awarding Cline $100,000 equity in the parties' marital home. We also hold that the court's denial of Pritchard's post-decree motions to set aside the Final Decree did not constitute even a slight

abuse of discretion.  Pritchard was personally served with the petition and summons, failed to appear, and suffered entry of default; because he had not appeared, he was not entitled to written notice of the default-judgment hearing under M. R. Civ. P. 55(b)(2).  The decree divided marital home equity, not protected veterans' disability benefits.  Accordingly, the January 2025 Final Decree and the March and August 2025 orders denying post-judgment relief are affirmed.  Cline's request for sanctions is denied.

/S/ KATHERINE M. BIDEGARAY

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ INGRID GUSTAFSON
/S/ BETH BAKER
/S/ JIM RICE